## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Walter E. Landi**, individually, and on behalf of all others similarly situated, | CASE NO. |
| Plaintiffs, | JUDGE: |
| v. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **The Timken Company**, an Ohio corporation, | |
| Defendant. | **JURY DEMAND** **(Endorsed hereon)** |

### INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff Walter E. Landi ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant, the Timken Company ("Timken") has implemented company-wide policies which violate federal and Illinois wage and hour laws as detailed herein.

2.      This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. 201, et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, et seq. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq. ("IWPCA") for Defendants' failure to pay Plaintiffs, and other similarly situated employees, minimum wages, overtime wages, and earned wages.  This case is brought as a collective action under 29 U.S.C. § 216(b). Plaintiff's consent form to act as a representative plaintiff is attached as Exhibit A.

### JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b). In addition, this Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims derive from the same

common conduct that led to violations of the FLSA; that is, the FLSA and state law claims all derive from the same common nucleus of operative facts.  28 U.S.C. § 1367.

4.      Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the decisions to pay Plaintiff and the Class Members in the illegal ways detailed herein were made within this judicial district.

5.      Timken is subject to personal jurisdiction before this Court because Timken is an Ohio corporation with its principal place of business located at 4500 Mount Pleasant Street NW, North Canton, Ohio 44720.

6.      This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

7.      At all times material to the matters alleged in this Complaint, Plaintiff was an individual residing in Cook County, Illinois, and is a former employee of Timken.

8.      At all material times, Plaintiff was a full-time employee of Timken who worked as a non-exempt laborer from approximately 2012 through approximately June 1, 2024.

9.      At all material times, Plaintiff was employed by Timken within the state of Illinois and was paid as an hourly employee.

10.     The Collective Members are all non-exempt hourly employees that worked for Timken in excess of forty (40) hours in a given workweek anywhere in the United States that file their consents to join this matter within three (3) years of their final date of employment with Timken.

11.     The IMWL Class Members are all non-exempt hourly employees that worked for Timken in excess of forty (40) hours in a given workweek in Illinois at any point within three (3) years of the filing of this Complaint.

2

12.     The IWPCA Class Members are all employees who worked for Timken in Illinois while being subject to Timken's uniform or vacation pay policies at any point within ten (10) years of the filing of this Complaint.

13.     At all material times, Plaintiff was an employee of Timken as defined by the FLSA, IMWL and IWPCS

14.     The FLSA and IMWL both define "employer" as any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee. As Timken hired and fired employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's, the Collective Members' and the Class Members' employment with Timken, Timken is an employer within the coverage the FLSA and the IMWL.

15.     At all relevant times, Timken, individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's, the Collective Members' and the Class Members' work and wages.

16.     At all relevant times, Plaintiff, the Collective Members and the Class Members, in their work for Timken, were engaged in commerce or the production of goods for commerce.

17.     At all relevant times, Plaintiff, the Collective Members and the Class Members, in their work for Timken, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

18.     At all material times, Timken was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and Class Members. *See* Illinois Minimum Wage Law, 820 ILCS § 105/3(c);

3

Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq*.

<strong><u>FACTS</u></strong>

19.     At all relevant times, Plaintiff, the Collective Members and the Class Members worked for Timken in excess of forty (40) hours in a given workweek.

20.     In fact, Plaintiff regularly worked sixty (60) to seventy (70) hours per week during his employment with Timken.

21.     Plaintiff, the Class Members and Collective Members are and were non-exempt employees.

22.     Plaintiff, the Class Members and Collective Members are and were paid on an hourly rate basis.

23.     When they work more than forty (40) hours in a workweek, they are entitled to overtime to be paid at one and one-half times their regular rates of pay.

24.     At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to Timken's Meal Break Policy.

25.     Pursuant to Timken's Meal Break Policy, Timken automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff, the Collective Members and the Class Members.

26.     Timken made this automatic 30-minute deduction from Plaintiff's, the Collective Members' and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

27.     The job demands of Plaintiff, the Collective Members and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

4

28.     Nevertheless, Timken automatically deducted thirty minutes from every shift of worked by Plaintiff, the Collective Members and the Class Members, thereby denying them lawful minimum and overtime wages.

29.     Both the FLSA and IMWL require the inclusion in the regular rate of all remuneration for employment. *See* 29 C.F.R. § 77.208. As such, both the FLSA and IMWL require that non-discretionary bonuses be included the "regular rate of pay" for the purpose of computing the legally required overtime premium. *See id.*

30.     Timken paid Plaintiff, the Collective Members and the Class Members different categories of non-discretionary bonuses.

31.     However, Timken failed to include these bonuses in Plaintiff's, the Collective Members' and the Class Members' regular rates of pay for the purpose of computing their overtime compensation.

32.     Such non-discretionary bonuses that were not included in Plaintiff's, the Collective Members' and the Class Members' regular rates of pay for the purpose of computing overtime compensation include, but are not limited to, shift differentials, lead pay, special payments, taxable gifts, recognition rewards and referral bonuses.

33.     As a result of failing to include these non-discretionary bonuses in Plaintiff's the Collective Members' and the Class Members' regular rates of pay prior to computing their overtime compensation, Timken has violated the overtime provisions of the FLSA and IMWL.

34.     Both the FLSA and IMWL provide that wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." *See* 29 C.F.R. § 531.35. The wage requirements of the FLSA and IMWL will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. *See id.* This is

5

true whether the "kick-back" is made in cash or in other than cash. *See id.* A violation of the FLSA and IMWL occurs when the costs of "tools of the trade" cut into the overtime otherwise paid to the employee. *See* 29 C.F.R. § 531.35.

35.       At all relevant times, Plaintiff, the Collective Members and the Class Members were subject to Timken's strict uniform requirements.

36.       Pursuant to this policy, Plaintiff, the Collective Members and the Class Members were required to wear a uniform issued by Timken at all relevant times.

37.       However, Timken required Plaintiff, the Collective Members and the Class Members to rent these uniforms from Timken.

38.       Pursuant to this policy, Timken deducted the cost of "renting" the required uniforms from Plaintiff's, the Collective Members' and the Class Members' compensation during each and every pay period.

39.       As a result, Timken did not pay Plaintiff, the Collective Members and the Class Members all required overtime "free and clear" during all pay periods where Plaintiff, the Collective Members and the Class Members worked in excess of forty (40) hours in a week.

40.       In other words, Timken violated the FLSA and IMWL by requiring Plaintiff, the Collective Members and the Class Members to "kick-back" overtime that was otherwise owed to them in the form of the uniform "rental."

41.       The IWPCA prohibits deductions from an employees pay when they are not deductions by employers from wages or final compensation are prohibited unless such deductions are made with the express written consent of the employee, given freely at the time the deduction is made. *See* 820 ICLS § 115/9.

42.       Timken's required uniform rentals were not primarily for the benefit of Plaintiff, the Collective Members, and the Class Members.

6

43.     Timken violated the IWPCA by making the deductions for the uniform rentals from Plaintiff's, the Collective Members' and the Class Members' pay without first receiving their express written consent.

44.     The IWPCA further provides that an employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer. *See* 820 ILCS § 115/9.5(a).

45.     The cost of "renting" the uniforms was necessary and within the scope of Plaintiff's and the Class Member's employment and directly related to the services they performed for Timken.

46.     To be sure, Timken would not have permitted Plaintiff and the Class Members to perform any tasks or job duties without first donning the uniform which Timken also required Plaintiff and the Class Members to "rent."

47.     By failing to reimburse Plaintiff and the Class Members for the costs of "renting" the uniform, Timken has violated the IWPCA.

48.     The IWPCA further provides that unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation. 820 ILCS § 115/5.

49.     At all relevant times, Plaintiff and the Class Members had an agreement with Timken regarding vacation time which was memorialized in Timken's Vacation Pay policy.

50.     As part of this part of Timken's Vacation Pay policy, Plaintiff and the Class Members were eligible for a graduated scale of vacation time which would increase based on the

7

length of service that Plaintiff and the Class Members achieved with Timken.

51.     Timken further violated the IWPCA by failing to pay Plaintiff and the Class Members all earned Vacation Pay upon their separation of employment with Timken.

52.     As a result of Timken's company-wide policies, Plaintiff and Class and Collective Members were not paid for all time worked each day and are owed significant unpaid wages.

53.     Timken's method of paying Plaintiff and Class and Collective Members in violation of federal and Illinois law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Timken knew the overtime requirements detailed herein, but intentionally and/or recklessly failed to comply with the same.

## COLLECTIVE ACTION ALLEGATIONS

54.     Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

55.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and as a representative of all current and former non-exempt hourly paid employees of Timken who worked more than forty (40) hours during at least one week within three (3) years of filing their consents to join this Action.

56.     Timken subjected all of their non-exempt employees, including Plaintiff and the Collective Members, to their policy and practice of automatically deducting thirty minutes from each shift regardless of whether Plaintiff and the Class Member were able to take a meal break or had their meal brek interrupted in violation of 29 U.S.C. § 207.

57.     Timken subjected all of their non-exempt employees, including Plaintiff and the Collective Members, to their policy of failing to include all non-discretionary bonuses in Plaintiff's and the Collective Members' regular rates of pay in violation of 29 U.S.C. § 207.

8

58.     Timken subjected all of their non-exempt employees, including Plaintiff and the Collective Members, to their policy of requiring Plaintiff and the Collective Member to "kick-back" overtime in the form of uniform rentals.

59.     Timken's meal break policy, overtime calculation policy, and uniform rental policy applied to all non-exempt hourly employees regardless of which facility Timken employed them to work at.

60.     Plaintiff's claims stated in this Complaint are essentially the same as those of the Collective Members. This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiff is identical or substantially similar.

61.     The Collective Members perform or have performed the same or similar work as Plaintiff.

62.     Timken's failure to pay overtime compensation required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of Plaintiff or the Collective Members.

63.     Although the exact amount of damages may vary among the Collective Members, the damages for the Collective Members can be easily calculated by a simple formula. The claims of all Collective Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Timken that caused harm to all of the Collective Members.

64.     As such, Plaintiff brings his FLSA overtime claim as a nationwide collective action on behalf of the following nationwide FLSA Collective:

> **All current and former non-exempt employees of Timken who worked at least 40 hours during at least one week in the three-year period before filing their consents to join this Action.**

9

65.     Timken's unlawful conduct, as described herein, is pursuant to Timken's corporate policy or practice of minimizing labor costs by refusing and/or failing to properly compensate its employees according to the FLSA.

66.     Timken is aware or should have been aware that federal law prohibited them from not paying Plaintiff and the Collective Members all overtime as detailed herein.

67.     Timken's unlawful conduct has been widespread, repeated, and consistent.

68.     This action is properly brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

69.     Upon information and belief, the individuals similarly situated to Plaintiff include thousands of non-exempt employees currently and/or formerly employed by Timken. Plaintiff is unable to state the precise number of similarly-situated employees because that information is solely in Timken's possession, custody, or control, but it can be readily ascertained from its employment records.

70.     Notice can be provided to the Collective Members by First Class Mail to the last address known to Timken, via email at the last known email address known to Timken, by text message to the last known telephone number known to Timken, and by posting a Notice of this lawsuit at each of Timken's facilities where non-exempt workers are employed.

## **RULE 23 CLASS ACTION ALLEGATIONS**

71.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Illinois Classes:

> **IMWL Class: All of Timken's current and former non-exempt employees who worked in excess of 40.0 hours during at least one week in their employment in Illinois in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

10

**IWPCA Class:** **All of Timken's current and former employees that were subject to Timken's uniform or vacation policies in their employment in Illinois in the ten-year period before the filing of the Original Complaint to the final resolution of this Action.**

72.     Numerosity:  The number of members in the Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from Timken's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class and Timken.

73.     Typicality:  Plaintiff's claims are typical of the Class because like the members of the Class, Plaintiff was subject to Timken's company-wide policies and practices and were compensated in the same manner as others in the Class. Timken failed to pay the Class Members for all overtime hours they worked. Additionally, members of the Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiff and the Class Members have been uncompensated and/or under-compensated as a result of Timken's common policies and practices which failed to comply with Illinois law. As such, Plaintiffs' claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Timken's common course of conduct in violation of law as alleged herein.

74.     Adequacy:  Plaintiff is a representative party who will fairly and adequately protect the interests of the Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Illinois law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff

does not have any interest which may be contrary to or in conflict with the claims of the Class he seeks to represent.

75.     Commonality:  Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

> a.  Whether Plaintiff and the Class are entitled to unpaid overtime under the IMWL;
>
> b.  Whether Plaintiff and the Class Members suffered violations of the IWPCA as a result of Timken's uniform policy;
>
> c.  Whether Plaintiff and the Class Members suffered violations of the IWPCA as a result of Timken's vacation time policy;
>
> d.  The proper measure of damages sustained by Plaintiff and the Class; and
>
> e.  Whether Timken's actions were "willful."

76.     Superiority:  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Timken, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Timken.

77.     A class action, by contrast, presents far fewer management difficulties and affords comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class by mail, electronic mail, text message, print,

broadcast, internet and/or multimedia publication. The identity of the members of the Illinois Class is readily identifiable from Timken's records.

78.    This type of case is well-suited for class action treatment because: (1) Timken's practices, policies, and/or procedures were uniform; (2) the burden is on Timken to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Timken to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Illinois claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Timken to pay Plaintiff and the Class per applicable Illinois laws.

## COUNT ONE: FAIR LABOR STANDARDS ACT

79.    Plaintiff and the Collective Members reallege and incorporate by reference all allegations in all preceding paragraphs.

80.    At all relevant times, Plaintiff and the Collective Members worked for Timken in excess of forty (40) hours in a given workweek.

81.    In fact, Plaintiff regularly worked sixty (60) to seventy (70) hours per week during his employment with Timken.

82.    Plaintiff and the Collective Members are and were non-exempt employees.

83.    Plaintiff and the Collective Members are and were paid on an hourly rate basis.

84.    When they work more than forty (40) hours in a workweek, they are entitled to overtime to be paid at one and one-half times their regular rates of pay.

85.    At all relevant times, Plaintiff and the Collective Members were subject to Timken's Meal Break Policy.

86.    Pursuant to Timken's Meal Break Policy, Timken automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Collective Members.

13

87.     Timken made this automatic 30-minute deduction from Plaintiff's and the Collective Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

88.     The job demands of Plaintiff and the Collective Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

89.     Nevertheless, Timken automatically deducted thirty minutes from every shift of worked by Plaintiff and the Collective Members, thereby denying them lawful minimum and overtime wages.

90.     The FLSA requires the inclusion in the regular rate of all remuneration for employment. *See* 29 C.F.R. § 77.208. As such, the FLSA requires that non-discretionary bonuses be included the "regular rate of pay" for the purpose of computing the legally required overtime premium. *See id.*

91.     Timken paid Plaintiff and the Collective Members different categories of non-discretionary bonuses.

92.     However, Timken failed to include these bonuses in Plaintiff's and the Collective Members' regular rates of pay for the purpose of computing their overtime compensation.

93.     Such non-discretionary bonuses that were not included in Plaintiff's and the Collective Members' regular rates of pay for the purpose of computing overtime compensation include, but are not limited to, shift differentials, lead pay, special payments, taxable gifts, recognition rewards and referral bonuses.

14

94.     As a result of failing to include these non-discretionary bonuses in Plaintiff's and the Collective Members' regular rates of pay prior to computing their overtime compensation, Timken has violated the overtime provisions of the FLSA.

95.     The FLSA provides that wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." *See* 29 C.F.R. § 531.35. The wage requirements of the FLSA will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. *See id.* This is true whether the "kick-back" is made in cash or in other than cash. *See id.* A violation of the FLSA occurs when the costs of "tools of the trade" cut into the overtime otherwise paid to the employee. *See* 29 C.F.R. § 531.35.

96.     At all relevant times, Plaintiff and the Collective Members were subject to Timken's strict uniform requirements.

97.     Pursuant to this policy, Plaintiff and the Collective Members were required to wear a uniform issued by Timken at all relevant times.

98.     However, Timken required Plaintiff and the Collective Members to rent these uniforms from Timken.

99.     Pursuant to this policy, Timken deducted the cost of "renting" the required uniforms from Plaintiff's and the Collective Members' compensation during each and every pay period.

100.     As a result, Timken did not pay Plaintiff and the Collective Members all required overtime "free and clear" during all pay periods where Plaintiff and the Collective Members worked in excess of forty (40) hours in a week.

101.    In other words, Timken violated the FLSA by requiring Plaintiff and the Collective Members to "kick-back" overtime that was otherwise owed to them in the form of the uniform "rental."

102.    Although at this stage, Plaintiff and the Collective Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the Collective Members believe that such information will become available during the course of discovery. Furthermore, when an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

103.    Timken knew that – or acted with reckless disregard as to whether – its refusal or failure to properly compensate Plaintiff and the Collective Members over the course of their employment would violate the FLSA, and Timken was aware of the FLSA's overtime requirements. As such, Timken's conduct constitutes a willful violation of the FLSA.

104.    As a result of Timken's failure or refusal to pay Plaintiff and the Collective Members one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek, Timken violated 29 U.S.C. § 207(a). Plaintiff and the Collective Members are therefore entitled to compensation of one and one-half times their regular rate of pay, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT TWO: ILLINOIS MINIMUM WAGE LAW

105.    All previous paragraphs are incorporated as though fully set forth herein.

106.    The Illinois Minimum Wage Law ("IMWL") entitles covered employees to overtime compensation of not less than one and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of forty (40) in one workweek. *See* 820 Ill. Comp. Stat §

16

105/4a(1).

107.    The Illinois Administrative Code provides that the Director of the Illinois Department of Labor, in interpreting the IMWL and regulations thereunder, may look to the United States Department of Labor's regulations and interpretations of the FLSA. *See* Ill. Admin. Code tit. 56, pt. 210.120 (2012). But the Code also provides that where there are concurrent state and federal powers, the stricter of the two shall prevail. *See* Ill. Admin. Code tit. 56, pt. 210.100 (2012). Thus, if there is a difference in the interpretation of the IMWL and FLSA, the IMWL is more favorable to the employee. *See Driver,* 890 F. Supp 2d at 1011.

108.    At all relevant times, Plaintiff and the Class Members worked for Timken in excess of forty (40) hours in a given workweek.

109.    In fact, Plaintiff regularly worked sixty (60) to seventy (70) hours per week during his employment with Timken.

110.    Plaintiff and the Class Members are and were non-exempt employees.

111.    Plaintiff and Class Members are and were paid on an hourly rate basis.

112.    When they work more than forty (40) hours in a workweek, they are entitled to overtime to be paid at one and one-half times their regular rates of pay.

113.    At all relevant times, Plaintiff and the Class Members were subject to Timken's Meal Break Policy.

114.    Pursuant to Timken's Meal Break Policy, Timken automatically deducts a thirty-minute meal break for each and every shift worked by Plaintiff and the Class Members.

115.    Timken made this automatic 30-minute deduction from Plaintiff's and the Class Members' pay regardless of whether they were actually permitted to take a meal break, regardless of whether they were permitted to take a full thirty-minute meal break, and regardless of whether they were completely relieved from duty for thirty-minutes.

116. The job demands of Plaintiff and the Class Members routinely foreclosed their ability to take any meal break, prohibited them from taking a full thirty-minute meal break, or prohibited them being completely relieved from duty for thirty-minutes.

117. Nevertheless, Timken automatically deducted thirty minutes from every shift of worked by Plaintiff and the Class Members, thereby denying them lawful minimum and overtime wages.

118. The IMWL requires the inclusion in the regular rate of all remuneration for employment. As such, the IMWL requires that non-discretionary bonuses be included the "regular rate of pay" for the purpose of computing the legally required overtime premium. *See id.*

119. Timken paid Plaintiff and the Class Members different categories of non-discretionary bonuses.

120. However, Timken failed to include these bonuses in Plaintiff's and the Class Members' regular rates of pay for the purpose of computing their overtime compensation.

121. Such non-discretionary bonuses that were not included in Plaintiff's and the Class Members' regular rates of pay for the purpose of computing overtime compensation include, but are not limited to, shift differentials, lead pay, special payments, taxable gifts, recognition rewards and referral bonuses.

122. As a result of failing to include these non-discretionary bonuses in Plaintiff's and the Class Members' regular rates of pay prior to computing their overtime compensation, Timken has violated the overtime provisions of the IMWL.

123. The IMWL provides that wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the  IMWL will not be met where the employee "kicks-

18

back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.. A violation of the IMWL occurs when the costs of "tools of the trade" cut into the overtime otherwise paid to the employee.

124. At all relevant times, Plaintiff and the Class Members were subject to Timken's strict uniform requirements.

125. Pursuant to this policy, Plaintiff and the Class Members were required to wear a uniform issued by Timken at all relevant times.

126. However, Timken required Plaintiff and the Class Members to rent these uniforms from Timken.

127. Pursuant to this policy, Timken deducted the cost of "renting" the required uniforms from Plaintiff's and the Class Members' compensation during each and every pay period.

128. As a result, Timken did not pay Plaintiff and the Class Members all required overtime "free and clear" during all pay periods where Plaintiff and the Class Members worked in excess of forty (40) hours in a week.

129. In other words, Timken violated the IMWL by requiring Plaintiff and the Class Members to "kick-back" overtime that was otherwise owed to them in the form of the uniform "rental."

130. Timken's failure to pay compensation as described above has been willful and/or in bad faith.

131. Timken knowingly failed to compensate Plaintiff and the Class Members for all hours worked and hours worked in excess of forty (40) hours in a workweek, in violation of the IMWL. *See* 820 Ill. Comp. Stat. § 105/4a(1).

132. Pursuant to 820 Ill. Comp. Stat. § 105/12(a), employers such as Timken who fail to

19

pay an employee wages in conformance with the IMWL, shall be liable to the employee for, inter cilia, unpaid wages for three years prior to the filing of the lawsuit, punitive damages in the amount of five percent (5%) per month of the amount of underpayment, and reasonable attorneys' fees and costs.

### COUNT THREE: ILLINOIS WAGE PAYMENT AND COLLECTION ACT

133.    All previous paragraphs are incorporated as though fully set forth herein.

134.    The IWPCA prohibits deductions from an employees pay when they are not deductions by employers from wages or final compensation are prohibited unless such deductions are made with the express written consent of the employee, given freely at the time the deduction is made. *See* 820 ICLS § 115/9.

135.    Timken's required uniform rentals were not primarily for the benefit of Plaintiff, the Collective Members, and the Class Members.

136.    Timken violated the IWPCA by making the deductions for the uniform rentals from Plaintiff's, the Collective Members' and the Class Members' pay without first receiving their express written consent.

137.    The IWPCA further provides that an employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer. *See* 820 ILCS § 115/9.5(a).

138.    The cost of "renting" the uniforms was necessary and within the scope of Plaintiff's and the Class Member's employment and directly related to the services they performed for Timken.

139.    To be sure, Timken would not have permitted Plaintiff and the Class Members to perform any tasks or job duties without first donning the uniform which Timken also required

20

Plaintiff and the Class Members to "rent."

140.    By failing to reimburse Plaintiff and the Class Members for the costs of "renting" the uniform, Timken has violated the IWPCA.

141.    The IWPCA further provides that unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation. 820 ILCS § 115/5.

142.    At all relevant times, Plaintiff and the Class Members had an agreement with Timken regarding vacation time which was memorialized in Timken's Vacation Pay policy.

143.    As part of this part of Timken's Vacation Pay policy, Plaintiff and the Class Members were eligible for a graduated scale of vacation time which would increase based on the length of service that Plaintiff and the Class Members achieved with Timken.

144.    Timken further violated the IWPCA by failing to pay Plaintiff and the Class Members all earned Vacation Pay upon their separation of employment with Timken.

145.    As a result of Timkin's violations of the IWPCA, Plaintiff and the Class Members are entitled to reimbursement of all deductions that Timkin made for uniform rentals and all unpaid vacation time, interest at five percent per month on all such amounts, and all reasonable attorney fees and costs incurred in the prosecution of this matter.

## JURY DEMAND

146.    Plaintiff hereby demands trial by jury on all issues.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all Class Members, prays that the Court:

1.      Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2.      Appoint Plaintiff as Representative of the Class, and appoint her counsel as Class Counsel;

3.      Find and declare that Timkin's policies and/or practices described above violate federal and Illinois law;

4.      Award all unpaid wages, liquidated damages, penalties, interest, and/or restitution to be paid by Timkin for the causes of action alleged herein;

5.      Award all uniform rental expenses deducted by Timkin;

6.      Award all unpaid vacation time;

7.      Award costs, and expenses, including reasonable attorneys' fees and expert fees;

8.      Award pre-judgment and post-judgment interest, as provided by law; and

9.      Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: October 30, 2024                    Respectfully submitted,


s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ *James L. Simon*
James L. Simon
Simon Law Co.
11 ½ N. Franklin Street
Chagrin Falls, OH 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com